# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

### 1:18-cv-01366-JTN-ESC

IN RE: SPIECH FARMS, LLC,

Debtor,                                                    Hon. Janet T. Neff

_____/

PRODUCE PAY, INC.,                                         Hon. John T. Gregg

Plaintiff-Appellant,                                       Chapter 7

                                                           17-05398

v.                                                         Bankr. W.D. Mich.

SPIECH FARMS, LLC,  et. al.,                        **APPELLEES' BRIEF**

Defendants-Appellees.                               **ON APPEAL**

_____/

Jason R. Klinowski                    Cody H. Knight
Wallace, Jordan, Ratliff & Brandt, LLC    Rayman & Knight
800 Shades Creek Parkway, Suite 400   141 East Michigan Avenue, Suite 301
Birmingham, Alabama 35209             Kalamazoo, Michigan  49007
Telephone: (205) 870-0555             Telephone: (269) 345-5156
jklinowski@wallacejordan.com          chk@raymanknight.com
*Attorneys for Produce Pay, Inc.*     *Attorneys for Debtor*

                                      Elisabeth M. Von Eitzen
                                      Stephen B. Grow
                                      Warner Norcross + Judd LLP
                                      111 Lyon St NW, Suite 900
                                      Grand Rapids, Michigan 49503
                                      Telephone: (616) 752-2000
                                      evoneitzen@wnj.com
                                      *Attorneys for the Official Committee of*
                                      *Unsecured Creditors*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

REQUEST FOR ORAL ARGUMENT ................................................ iv

STATEMENT OF JURISDICTION ...................................................... 1

STATEMENT OF ISSUES ................................................................. 2

STATEMENT OF THE CASE .............................................................. 2

  A. Nature of the Case ..................................................................... 2

  B. Summary of Proceedings and Disposition Below ........................ 3

SUMMARY OF THE AGRUMENT ...................................................... 7

ARGUMENT ..................................................................................... 9

  I.  The Bankruptcy Court Properly Determined that Produce Pay Is A Lender And Therefore is Not Protected by PACA ....................................................... 9

    A. The Perishable Agricultural Commodities Act, 7 U.S.C. § 499a-499t ......... 9

    B. Produce Pay is a Lender Not Entitled to PACA's Protection ..................... 10

      i.  The Bankruptcy Court Properly Applied the UCC to Determine that Debtor Did Not Pass Title to the Produce to Produce Pay ............................. 11

      ii.  The Bankruptcy Court Properly Held that Produce Pay Did Not Purchase Debtor's Accounts Receivable ..................................................... 13

  II.  Produce Pay's New Alternative Claims that it Is a Lender Protected by PACA Are Unavailing Because PACA only Protects Unpaid Sellers and Suppliers of Produce ......................................................................... 18

  III.  Produce Pay Has Waived Its Right to Appeal the Fee Orders Both By Failing to Raise the Issue in its Appellant's Brief and Because it Stipulated to Entry of the Fee Orders ................................................................ 19

CONCLUSION .................................................................................. 22

CERTIFICATE OF COMPLIANCE ..................................................... 23

CERTIFICATE OF SERVICE ............................................................. 24

# TABLE OF AUTHORITIES

|  | Page(s) |
|---|---|
| **Cases** |  |
| *Am. Family Prepaid Legal Corp. v. Columbus Bar Assoc.,* 498 F.3d 328 (6th Cir. 2007) | 18 |
| *Classic Harvest, LLC v. Freshworks LLC,* 2017 WL 3971192 (N.D. Ga. Sept. 7, 2017) | 14, 15 |
| *Cooper v. Commercial Sav. Bank.,* 591 Fed. Appx. 508 (6th Cir. Jan. 30, 2015) | 20 |
| *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.,* 67 F.3d 1063 (2nd Cir. 1995) | 14, 15, 16 |
| *In re May,* 448 B.R. 197 (W.D. Mich. 2011) | 9 |
| *In re United Producers, Inc.,* 526 F.3d 942 (6th Cir. 2008) | 9 |
| *Lewis v. Casab (In re Casab),* 523 B.R. 543 (Bankr. E.D. Mich 2015) | 21 |
| *Marks v. Newcourt Credit Grp., Inc.,* 342 F.3d 444 (6th Cir. 2003) | 20 |
| *McPherson v. Kelsey,* 125 F.3d 989 (6th Cir. 1997) | 20 |
| *National Credit Union Administration Board vs. Zovko,* 728 Fed. Appx. 567 (6th Cir. April 11, 2018) | 20 |
| *Nickey Gregory Company, LLC v. AgriCap, LLC,* 597 F.3d 591 (4th Cir. 2010) | 14, 15 |
| *Overton Distribs., Inc. v. Heritage Bank,* 340 F.3d 361 (6th Cir. 2003) | 9, 10 |
| *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable,* 336 F.3d 410 (5th Cir. 2003) | 14, 15, 16 |
| *S & H Packing & Sales Co., Inc. v. Tanimura Distributing, Inc.,* 883 F.3d 797 (9th Cir. 2018) | 14 |
| *Scottsdale Ins. Co. vs. Flowers,* 513 F.3d 546 (6th Cir. 2008) | 18 |
| *Six L's Packing Co., Inc. v. Beale,* 524 Fed. Appx. 148 (6th Cir. April 8, 2013) | 12 |
| *Thurman vs. Yellow Freight Sys., Inc.,* 97 F.3d 833 (6th Cir. 1996) | 18 |
| *United States v. Chrysler Group, LLC,* 571 Fed. Appx. 366 (6th Cir. July 2, 2014) | 20 |

|  | Page(s) |
|---|---|
| **Statutes** | |
| 7 U.S.C. §§ 499a-499t (the Perishable Agricultural Commodities Act of 1930) | *passim* |
| 7 U.S.C. §499e(c) | 9, 19 |
| 7 U.S.C. § 499o | 12 |
| 28 U.S.C. §157 | 1 |
| 28 U.S.C. § 158(a)(1) | 1 |
| Uniform Commercial Code | *passim* |
| Uniform Commercial Code §2-2401 | 11 |
|  | |
| **Federal Bankruptcy Rules** | |
| Fed. R. Bankr. P. 8005 | 1 |
| Fed. R. Bankr. P. 8018 | 1 |
| Fed. R. Bankr. P. 8019 | iv |

## REQUEST FOR ORAL ARGUMENT

Appellees believe this Court is capable of resolving this matter upon a review of the briefs submitted and upon a review of the thorough opinions of the Bankruptcy Court for the Western District of Michigan which "authoritatively decided" the dispositive issues. (Fed. R. Bankr. P. 8019 (b)(2)).  However, should the Court decide oral argument would be helpful, Appellees would readily participate.

Spiech Farms, LLC ("**Debtor**"), through its attorneys, Rayman & Knight, and the Official Committee of Unsecured Creditors for the Estate of Spiech Farms, LLC (the "**Committee**"), through its attorneys, Warner Norcross + Judd LLP, hereby submit their Appellees' Brief on Appeal.

## STATEMENT OF JURISDICTION

### A. Bankruptcy Court's Subject Matter Jurisdiction

The Bankruptcy Court had jurisdiction to hear the underlying case as it was a core proceeding pursuant to 28 U.S.C. §157.

### B. U.S. District Court's Subject Matter Jurisdiction

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1) and Fed. R. Bankr. P. 8005(a) as it relates to Produce Pay's PACA claim. Debtor and the Committee do not object to the Court exercising pendent jurisdiction as it relates to the Bankruptcy Court's orders granting interim fees to Rayman & Knight, Warner Norcross + Judd, and Delta Management Resources, LLC.

### C. Timeliness of Appeal

This Brief complies with Fed. R. Bankr. P. 8018. The Appellant's Brief was filed on February 15, 2019 and the Appellees' brief was due 30 days thereafter.

### D. Appeal of Final Order

The appeal is from a final order of the United States Bankruptcy Court for the Western District of Michigan.

**STATEMENT OF ISSUES**

1.      Did the Bankruptcy Court err by ruling that Produce Pay is a lender, not a seller or supplier protected by the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a-499t?

> Appellant answers "Yes."
> Appellees answer "No."
> The Bankruptcy Court answers "No."

2.      Did the Bankruptcy Court err by approving and authorizing, but not directing, payment of the interim Fee Applications of Debtor's professionals, Rayman & Knight, Warner Norcross + Judd LLP, and Delta Management Resources, LLC?

> Appellant answers "Yes."
> Appellees answer "No."
> The Bankruptcy Court answers "No."

**STATEMENT OF THE CASE**

**A. Nature of the Case**

On April 13, 2018, Produce Pay filed a PACA Proof of Claim (Claim No. 111) (the "**PACA Claim**").  (PACA Claim, PageID.3109-3213.)  The United States Bankruptcy Court for the Western District of Michigan (the "**Bankruptcy Court**") held that Produce Pay did not have a valid claim under the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a-499t ("**PACA**").  The Bankruptcy Court correctly found that Produce Pay did not buy produce from

2

Debtor, and therefore did not own produce to sell, because Debtor had already sold that same produce to end customers.[1]   The so-called Distribution Agreement between Produce Pay and Debtor is in fact a disguised loan, not a true sale of produce and lenders like Produce Pay have no PACA rights.   Produce Pay appeals the Bankruptcy Court's decision sustaining Appellees' objection to the PACA Claim.

The Bankruptcy Court accurately and succinctly sets forth: (a) the background of Debtor's relationship with Produce Pay; (b) the terms of the Distribution Agreement; and (c) the events leading to Debtor's bankruptcy filing. Therefore, Appellees incorporate the Bankruptcy Court's Background section in the Opinion Regarding PACA Claim of Produce Pay, Inc. (the "**Opinion**") as if fully restated here.[2]   (Opinion, PageID.3036-3043.)

### B. Summary of Proceedings and Disposition Below

*PACA Proceedings*

On April 13, 2018, Produce Pay filed its PACA Claim.   On May 14, 2018, Debtor filed an objection to the Claim and the Committee filed a substantive joinder to Debtor's objection (collectively, the "**Objections**").   (Objections, PageID.2321-

---

[1] As the Bankruptcy Court noted in its order denying Produce Pay's motion for reconsideration and as discussed in the Section II of the Argument below, Produce Pay has now abandoned this entire argument.

[2] Produce Pay also noted that it "has no objection to the facts set out in the section of the October 18 Opinion titled Background." Motion to Alter or Amend and, for Reconsideration of, Order Disallowing Claim of Produce Pay, Inc. (Doc. 538), and Opinion Regarding PACA Claim of Produce Pay, Inc. (Doc. 537).   (PageID.3066.)

3

2496, PageID.2498-2523.)  Produce Pay filed a response to the Objections on June 13, 2018.

On September 24, 2018, the Bankruptcy Court held an evidentiary hearing on the Objections.  The sole issue presented to the Bankruptcy Court was whether Produce Pay had a valid PACA claim.  The Bankruptcy Court heard the testimony of Ben Dusastre (Produce Pay's CFO) and Joan Johnson (a special assets officer for Chemical Bank).  The parties also designated testimony of Tim Spiech that was previously presented to the Bankruptcy Court during an earlier cash collateral hearing.  Additionally, the parties submitted dozens of exhibits for the Bankruptcy Court's review, totaling hundreds of pages of documentary support.  Finally, Produce Pay stipulated at the hearing that all of the Produce at issue in this case had already been shipped and invoiced to Debtor's customer before the same produce was "sold" to Produce Pay under the Distribution Agreement.  (Transcript, PageID.2862.)

Following the hearing's conclusion, the Bankruptcy Court entered the Opinion (PageID.3035-3059) as well as the Order Disallowing PACA Claim of Produce Pay, Inc. (PageID.105-106).  In its Opinion, the Bankruptcy Court held that (a) Produce Pay is not a seller or supplier of produce because it could not take title to produce Debtor had already sold to end customers; and (2) the Distribution

4

Agreement constitutes a financing arrangement, not a purchase agreement. Therefore, Produce Pay did not have a valid PACA claim.

On November 1, 2018, Produce Pay filed its <u>Motion to Alter or Amend and, for Reconsideration of, Order Disallowing Claim of Produce Pay, Inc. (Doc. 538), and Opinion Regarding PACA Claim of Produce Pay, Inc. (Doc. 537)</u> (the "**Reconsideration Motion**"). (PageID.3060-3078.) On November 20, 2019, the Bankruptcy Court denied the Reconsideration Motion (the "**RM Denial Order**"). (PageID.114-118.)

*Fee Application Proceedings*

On June 21, 2018, Rayman & Knight filed its <u>Application for First Interim Chapter 11 Fees and Expenses of Rayman & Knight, Attorneys for Debtor</u> (the "**RK Fee Application**") and the <u>Application for First Interim Chapter 11 Fees and Expenses of Delta Management Resources, LLC, Financial Advisor for Debtor</u> (the "**Delta Fee Application**").  (RK Fee Application, PageID. 2585-2662; Delta Fee Application, PageID.2663-2688.)  On August 14, 2018, Warner Norcross + Judd LLP ("**WNJ**") filed its <u>First Application for Fee and Expenses of Warner Norcross & Judd LLP as Counsel to the Official Unsecured Committee of Unsecured Creditors of Spiech Farms, LLC</u> (the "**WNJ Fee Application**", and collectively with the RK Fee Application and the Delta Fee Application, the "**Fee Applications**"). (WNJ Fee Application, Page ID. 2721-2753.)  Produce Pay filed objections to each

5

of the Fee Applications (the "**Fee Objections**").  On September 14, 2018, Produce Pay, WNJ, Rayman & Knight, and Delta Management Resources ("**Delta**") filed the Stipulation to Adjourn Hearings on Fee Applications (the "**Fee Stipulation**").  (Fee Stipulation, PageID.2784-2789.)

On October 18, 2018, the Bankruptcy Court entered its Order Approving Fee Application of Rayman & Knight, Order Approving Fee Application of Warner Norcross & Judd LLP, and Order Approving Fee Application of Delta Management Resources, LLC (collectively, the "**Fee Orders**").  (Fee Orders, PageId.107-112.) The Fee Orders approved the Fee Applications and awarded WNJ, Rayman & Knight, and Delta (collectively, the "**Professionals**") interim compensation and reimbursement of expenses under 11 U.S.C. § 331.  *Id.*

On November 1, 2018, Produce Pay filed its motions for reconsideration of the Fee Orders (collectively, the "**Fee Reconsideration Motions**").  (PageId. 3079-3088.)  The Professionals filed a joint response to the Fee Reconsideration Motions on November 15, 2018. (Joint Response, PageID.3093-3099.)  On November 20, 2019, the Bankruptcy Court denied the Reconsideration Motions ("**Order Denying Fee RM**").  (PageID.119-122.)

This appeal followed.[3]

---

[3] Notably, Produce Pay (along with other parties) filed a complaint in the United States District Court for the Southern District of Georgia (Case No. 2:19-cv-00007-LGW-BWC) (the "**Georgia Complaint**").  The Georgia Complaint (i) asserts claims

## SUMMARY OF THE AGRUMENT

*PACA Claim:*

In 2017, Debtor needed additional financing to fund the fall grape harvest.  On August 31, 2017, Debtor and Produce Pay executed the Distribution Agreement. (PageID.3125-3143.)  According to Produce Pay, under the Distribution Agreement Produce Pay purchased grapes and blueberries (the "**Produce**") from Debtor and then, never taking delivery or possession of the Produce, commissioned Debtor on a consignment basis to sell that very same Produce to Debtor's customers.   Looking to the substance of the transaction, not the labels the parties have attached to it – as the Bankruptcy Court properly did here – it is crystal clear that the Distribution Agreement does nothing of the sort.

First, before Produce Pay purportedly purchased the Produce from Debtor, Debtor had already sold and delivered it to end customers like Kroger and Wal-Mart. Therefore, as a matter of law, Debtor's customers, not Debtor, had title to the very Produce Produce Pay contends it purchased under the Distribution Agreement.

---

against the Debtor; (ii) asserts claims that belong exclusively to the Debtor; and (iii) bids to re-litigate and collaterally attack adverse rulings from the Bankruptcy Court and preempt this Court's appellate authority.  As a result, on March 11, 2019, Debtor filed a motion for contempt asking the Bankruptcy Court to issue an order to show cause why Produce Pay and the other Georgia Complaint plaintiffs should not be held in contempt for violating the automatic stay.  That hearing is set for April 9, 2019.

Second, the Distribution Agreement did not constitute a true sale of Debtor's accounts receivable or the Produce because Produce Pay did not accept – and in fact expressly imposed on Debtor – all the risks a buyer assumes in a true sale.  Instead, the Distribution Agreement is an unsecured financing arrangement under which Produce Pay, as lender, made loans to Debtor.

Finally, Produce Pay's new arguments that even if Produce Pay is a lender, its financing relationship with Debtor is still afforded PACA protection, and that Produce Pay took by assignment Debtor's PACA rights, were raised for the first time in the Reconsideration Motion and are therefore waived.  These arguments are also without merit.  PACA protects unpaid sellers and suppliers, not lenders.  And any PACA trust to which Debtor might have been entitled was extinguished when Debtor's end customers paid Debtor for the Produce they purchased from Debtor.

*Fee Orders:*

Produce Pay does not address the Fee Applications or Fee Orders in its statement of issues or argument; instead Produce Pay only mentions them in the jurisdiction section and provides a summary of the fee related filings in the Bankruptcy Court.  Thus, Produce Pay abandoned its appeal on this issue.  In any event, Produce Pay's objection is without merit, first, because Produce Pay objects solely to *payment* of the approved fees, not to the *allowance* of them, second because Produce Pay's objection to fees was settled when the Bankruptcy Court overruled

8

Produce Pay's objection to Debtor's use of cash collateral, and third because Produce Pay agreed in the Fee Stipulation that its Fee Objections would be moot "if the Court determines that Produce Pay does not have a valid PACA claim." (Fee Stipulation, PageID.2784-2789.)[4]

## ARGUMENT

The Bankruptcy Court's findings of fact are accurate and its conclusions of law are correct and well founded.[5]  This Court should adopt them, uphold the Bankruptcy Court's decisions, and dismiss this appeal.

## I.   The Bankruptcy Court Properly Determined that Produce Pay Is A Lender And Therefore is Not Protected by PACA

### A. *The Perishable Agricultural Commodities Act, 7 U.S.C. § 499a-499t*

PACA provides for a "[t]rust on commodities and sales proceeds for [the] benefit of unpaid suppliers, sellers, or agents" of perishable agricultural commodities. 7 U.S.C. §499e(c).  One of PACA's purpose is "to protect unpaid sellers of perishable agricultural commodities." *Overton Distribs., Inc. v. Heritage Bank,* 340 F.3d 361, 364-65 (6th Cir. 2003).  To protect unpaid sellers, PACA creates a trust that protects "the sellers against financing arrangements made by merchants,

---

[4] Note, the Professionals have not been paid any amount allowed under the Fee Orders.

[5] "The bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed de novo." *In re May*, 448 B.R. 197, 200 (W.D. Mich. 2011) (quoting *In re United Producers, Inc.*, 526 F.3d 942, 946 (6th Cir. 2008)).

dealers, or brokers who encumber or give lenders a security interest in the commodities or the receivables or proceeds from the sale of the commodities, thus giving the claims of these sellers precedence over those of secured lenders." *Id.* at 365. Thus, PACA means that a lender (like Produce Pay) cannot exercise a priority right to payment over an unpaid seller or supplier of produce.

B.  *Produce Pay is a Lender Not Entitled to PACA's Protection*

From the bankruptcy case's inception, Produce Pay has argued that it is protected by PACA because under the Distribution Agreement, it "purchased" Produce from Debtor and then consigned it back to Debtor for sale to Debtor's end customers. *See* Produce Pay's Memorandum of Points and Authorities in Opposition to Debtor's Motion for Order Authorizing Use of Cash Collateral, PageID.214-215. The first indispensable link in Produce Pay's argument, then, is its claim that Debtor *sold* Produce to Produce Pay because unless Produce Pay purchased Produce for resale to Debtor's end customers, the entire Produce Pay scheme collapses. Examining the substance of the Distribution Agreement, the Bankruptcy Court came to the only conclusion possible: the Distribution Agreement is a financing transaction, not a true sale of Produce. And lenders like Produce Pay have no PACA rights.

i.    The Bankruptcy Court Properly Applied the UCC to Determine that Debtor Did Not Pass Title to the Produce to Produce Pay

Produce Pay claims that Debtor sold the Produce to Produce Pay.  Debtor, however, could not transfer title to the Produce to Produce Pay because Debtor had already sold and delivered the Produce to Debtor's end customers before any of the so-called sales between Produce Pay and Debtor occurred.  Produce Pay even stipulated to this fact on the first day of trial.  Nonetheless, Produce Pay claims that it had equitable title in the Produce until Produce Pay received full payment.

The Bankruptcy Court disagreed, holding that under Article 2 of the Uniform Commercial Code (the "**UCC**"), title to the Produce transferred to Debtor's customers before any title could pass to Produce Pay.  As the Bankruptcy Court noted, "a purported seller of goods generally cannot transfer title to property that it does not own."  (Opinion, PageID.3047.)  Thus, Debtor could only transfer title to the Produce to Produce Pay if Debtor owned the Produce at the time of the supposed sale transactions between Produce Pay and Debtor.

Under UCC § 2-2401, title to the Produce passed to Debtor's customers at the time Debtor physically delivered the Produce.  (Opinion, PageID.3052.)  As Produce Pay stipulated and the Bankruptcy Court found, "with respect to every Distributed Asset Pool [i.e. the Produce], the Debtor physically delivered produce to its customers before the Debtor designated produce for sale under the [Distribution] Agreement."  (*Id*.)  And, because title to the Produce transferred to Debtor's

11

customers upon delivery before the "sale" to Produce Pay, Debtor did not own the Produce at the time of the alleged transfers to Produce Pay.  As a result, Produce Pay never obtained title to any Produce.

Produce Pay does not challenge the Bankruptcy Court's holding regarding how title is transferred under the UCC.  Instead, Produce Pay argues that PACA preempts these provisions of the UCC.  Not so.  The Bankruptcy Court properly held that since PACA says nothing about when title to produce is transferred, the UCC applies.  *See Six L's Packing Co., Inc. v. Beale,* 524 Fed. Appx. 148, n.5 (6th Cir. April 8, 2013) (Under 7 U.S.C. § 499o, if PACA is silent as to the passage of title, then state law applies).

As the Bankruptcy Court noted in denying the Reconsideration Motion, "Produce Pay fails to identify any provision of PACA which addresses the passage of title to perishable agricultural commodities." (RM Denial Order, PageID.116.) Instead, Produce Pay simply claims that the UCC's title transfer provisions are "inconsistent" with PACA – by which Produce Pay means inconsistent with Produce Pay's flawed construction of PACA – but offers no substitute for the universally recognized title rules in the UCC.  Once again, Produce Pay is simply wrong.  As the Bankruptcy Court noted, it applied the UCC to determine whether Produce Pay actually purchased Produce from Debtor.  If Produce Pay did not purchase Produce from Debtor, Produce Pay cannot be an entity protected by PACA.  The Bankruptcy

Court's conclusion that "Produce Pay could not have purchased any produce from the Debtor because title to the same produce had already been transferred to the Debtor's customers" is supported by both the law and the facts and should be affirmed.  (RM Denial Order, PageID.116.)

Produce Pay fairs no better under the terms of the Distribution Agreement, either.  Under the Distribution Agreement, title[6] passes to the applicable grocer or other third party once that produce was "accepted by the applicable grocer, other retailer or purchaser."  (Distribution Agreement, PageID.3130.)  Debtor already sold and delivered the Produce to end customers before "selling" them to Produce Pay by uploading the pallets to Produce Pay's platform; therefore, title passed from Debtor to the end customers before Produce Pay could have even received any Distributed Asset Pools.  So, whether one applies state law UCC principles or simply follows the Distribution Agreement itself, Produce Pay never received title to any Produce under any definition or applicable law.  This Court should affirm the Bankruptcy Court's decision.

ii.   The Bankruptcy Court Properly Held that Produce Pay Did Not Purchase Debtor's Accounts Receivable

The Bankruptcy Court correctly held that the Distribution Agreement is a financing arrangement, a fact that the Distribution Agreement itself acknowledges,

---

[6] Notably, the Distribution Agreement does not provide that Produce Pay retains "equitable" title to the Produce until the end-customer paid Debtor.

providing that Produce Pay "has developed and made available an online software platform to provide *alternative financing* for produce growers and distributors . . . ." (Distribution Agreement, PageID.3126, ¶ 1, emphasis added.) The Bankruptcy Court also correctly concluded that the Distribution Agreement did not constitute a true sale of either Debtor's Produce or accounts receivable.[7] The Bankruptcy Court properly ruled that whether the Distribution Agreement "constitutes a true sale of the [Produce] turns on the 'substance of the relationship' between [Debtor and Produce Pay], 'not simply the label attached to the transaction' by the parties. *Classic Harvest, LLC v. Freshworks LLC,* 2017 WL 3971192, *8 (N.D. Ga. Sept. 7, 2017) (quoting *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable,* 336 F.3d 410, 414 (5th Cir. 2003) and *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.,* 67 F.3d 1063, 1068 (2nd Cir. 1995)).

The Bankruptcy Court properly concluded that the Sixth Circuit would follow the reasoning of the Second, Fourth, Fifth, and Ninth Circuits and adopt "a threshold true sale test to determine whether assets transferred in transactions that are labeled "sales" remain assets of a PACA trust." *S & H Packing & Sales Co., Inc. v. Tanimura Distributing, Inc.,* 883 F.3d 797, 801 (9th Cir. 2018). *See also Nickey*

---

[7] Even if the Court were to determine that the Bankruptcy Court improperly relied on the UCC's title transferring provisions, for the reasons set forth in the Opinion, Discussion, Part C, Produce Pay's "purchase" of the Produce did not constitute a true sale.  (Opinion, PageID.3053-3059.)

*Gregory Company, LLC v. AgriCap, LLC,* 597 F.3d 591 (4th Cir. 2010) (risk of non-payment was not shifted to factoring company so there was no true sale of receivables); *Reaves Brokerage,* 336 F.3d at 414 (the court determined that the factoring agreement was not a true sale because the risk of nonpayment by the end user was not transferred to the "buyer"); and *Endico Potatoes,* 67 F.3d at 1068; *Classic Harvest,* 2017 WL 3971192 at *9 (The factoring agreement did not reflect a true sale relationship where the "purchaser" did not have the risk of non-payment if an end user failed to pay the receivable because of a dispute relating to the quantity, quality, or price of the produce.).

Under the Distribution Agreement, Produce Pay did not accept – and in fact expressly assigned to Debtor – the risks a true buyer assumes in a true sale.  First, Debtor is obligated, under all circumstances and regardless of the ultimate disposition of the Produce, to "repurchase" it, meaning Debtor is on the hook to repay Produce Pay regardless of Debtor's success in marketing the Produce Produce Pay claims it "bought."  (Distribution Agreement, PageID.3135, ¶ 6.4.)  In other words, Produce Pay assumed no risk when it "purchased" Produce because Debtor was obligated to pay back the so-called purchase price, plus fees and expenses.

Second, in connection with Produce Pay's consignment of the Produce to Debtor, Debtor was required to pay Produce Pay promptly the amount of the

Company Proceeds,[8] even if the amount Debtor ultimately received from an end customer was less.  (*Id.* at PageID.3134, ¶ 6.1.)

Third, Produce Pay did not assume any collection risk.  Instead, the risk that an end customer did not pay for the Produce remained with Debtor:  Debtor "shall bear all default risk of any purchaser of the Produce.  As such [Debtor] shall compensate [Produce Pay] based on the first invoiced Gross Sales Proceeds even if a grocer, retailer or other purchaser or end user defaults on payment after having taken possession of the Produce."  (*Id.* at PageID.3136, ¶ 6.8.)  Debtor continued to carry all of the risk associated with non-payment by the end user.  (*Id.* at PageID.3134-3136, ¶¶ 6.1, 6.4, and 6.8.)  "Where the lender has *purchased* the accounts receivable, the borrower's debt is extinguished and the lender's risk with regard to the performance of the accounts is direct, that is, the lender and not the borrower bears the risk of non-performance by the account debtor."  *Reaves Brokerage,* 336 F.3d at 414 (quoting *Endico Potatoes,* 67 F.3d at 1069).  Here, Debtor continued to bear the risk of non-performance by the end customers and Debtor's liability to pay Produce Pay continued until it paid Produce Pay back the amount borrowed plus associated fees.  That is plain evidence of a loan, not a sale.

---

[8] The Distribution Agreement defines Company Proceeds as "with respect to a particular Distributed Asset Pool, the sum of the Asset Pool Purchase Price, the Sales Commission, the Marketplacing Commission, and the Company Expenses." (Distribution Agreement, PageID.3128, ¶ 2.1.)

16

Finally the Distribution Agreement did not operate like a sale ever took place. Produce Pay never took possession of the Produce and had no obligation to manage or maintain it; instead, Debtor kept the Produce post "sale" until it was delivered to the end customers.  (Distribution Agreement, PageID.3131, ¶ 4.2.)  Debtor was responsible to market and promote the sale of the Produce.  (*Id*. at ¶ 4.4.)  Further, Produce Pay disclaimed any liability to third parties for any damages caused by the consumption of the Produce or for failure to ship or deliver the Produce.  (*Id*. at PageID.3132, ¶ 4.8.)  Debtor was required to indemnify Produce Pay for "any damage or injury caused by the Produce, including any product liability claims or recall costs."  (*Id*. at PageID.3133, ¶ 5.4(a).)  Finally, Debtor, not Produce Pay, was required to procure and maintain insurance for any liability relating to the Produce. (*Id.* at PageID.3140, ¶ 10.12.)

As the Bankruptcy Court held, "Produce Pay's alleged status as a PACA trust beneficiary requires it to be an 'unpaid seller or supplier' of perishable agricultural commodities.  Produce Pay cannot be unpaid unless it also has a right to payment (*i.e., receivables*).  Because Produce Pay's right to payment arises from its alleged purchase of Debtor's receivables, the Bankruptcy Court committed no error of law when it applied the transfer-of-risk test to determine whether the Debtor sold its receivables or granted a security interest to Produce Pay."  (Order Denying RM, PageID.117.)  In sum, because Produce Pay neither purchased Produce from the

Debtor, nor purchased Debtor's accounts receivable, it has no PACA rights and cannot have a PACA claim. The Bankruptcy Court properly disallowed Produce Pay's PACA claim on these grounds.

## II. Produce Pay's New Alternative Claims that it Is a Lender Protected by PACA Are Unavailing Because PACA only Protects Unpaid Sellers and Suppliers of Produce

In truth, Produce Pay does not seriously challenge the Bankruptcy Court's holding that Produce Pay did not purchase Produce or accounts receivable. Instead, Produce Pay has retreated to new arguments. Produce Pay now claims that even if it is merely a lender, it is either a lender still protected under PACA, or it is entitled to the PACA protections Debtor enjoyed by assignment. As the Bankruptcy Court noted, with the latter argument, "Produce Pay effectively abandons its primary argument that it purchased produce from Debtor." (Order Denying RM, PageID.117.) Because Produce Pay never raised these arguments at trial or in any of its previous briefing (they first appear in the Reconsideration Motion), they are waived. *See Scottsdale Ins. Co. vs. Flowers,* 513 F.3d 546, 553 (6th Cir. 2008) (citing *Am. Family Prepaid Legal Corp. v. Columbus Bar Assoc.,* 498 F.3d 328, 335 (6th Cir. 2007); *Thurman vs. Yellow Freight Sys., Inc.,* 97 F.3d 833, 835 (6th Cir. 1996) (issue raised for first time in motion to amend the judgment was waived)).

In any event, substantively neither argument has any merit. First, Produce Pay argues that whether a true sale occurred is irrelevant because the kind of

18

financing Produce Pay provided is not the kind that is prohibited under 7 US.C. § 499e(c)(1).  Produce Pay provides absolutely no legal support for this assertion. Nothing under PACA distinguishes between or protects certain types of lenders. PACA is clear, as are the authorities construing it: the PACA trust protects unpaid sellers and suppliers of perishable agricultural commodities, not lenders.

Second, Produce Pay appears to argue that it took an assignment of Debtor's PACA rights and stands in Debtor's shoes with regards to Debtor's PACA rights. That argument, however, goes nowhere.  Even if Produce Pay somehow stands in Debtor's shoes with respect to Debtor's PACA rights, any beneficial interest Debtor had in a PACA trust was extinguished when the end customers paid Debtor for the Produce.

III.    **Produce Pay Has Waived Its Right to Appeal the Fee Orders Both By Failing to Raise the Issue in its Appellant's Brief and Because it Stipulated to Entry of the Fee Orders**

Produce Pay's objection to the Fee Orders is of the same vein as its manufactured claims that it "bought" and "sold" Produce and that it is – somehow – a PACA protected lender.  It does not cite a single case, fact, record citation, treatise or other authority in support its appeal of the Fee Orders.   Indeed, the only location in the brief where Produce Pay even mentions the Fee Applications or Fee Orders is in the jurisdictional statement and the summary of proceedings (other than a cursory line in the summary of the argument).  Since Produce Pay fails to make any argument

19

in support of its appeal of the Fee Orders, Produce Pay has abandoned its appeal on that issue and this Court should affirm the Fee Orders on this basis alone.  *See National Credit Union Administration Board vs. Zovko,* 728 Fed. Appx. 567, 569 (6th Cir. April 11, 2018) (citing *Cooper v. Commercial Sav. Bank.,* 591 Fed. Appx. 508, 509 (6th Cir. Jan. 30, 2015)).

As the *Cooper* court noted, "[a]n appellant waives an issue when he fails to present it in his initial briefs before this court."  *Cooper,* 591 Fed. Appx. at 509 (quoting *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 462 (6th Cir. 2003)). Therefore, this appeal "begins and ends with the issue of waiver."  *Cooper,* 591 Fed. Appx. at 509.  *See also United States v. Chrysler Group, LLC,* 571 Fed. Appx. 366, 372 (6th Cir. July 2, 2014) (quoting *McPherson v. Kelsey,* 125 F.3d 989, 995-996 (6th Cir. 1997)) (The Sixth Circuit held "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court . . . to put flesh on its bones.")  Since Produce Pay failed to substantively address the Fee Orders, its appeal of the Fee Orders is waived.

Second, as the Bankruptcy Court correctly noted, "Produce Pay did not object to the reasonableness of the fees and expenses."  (Order Denying Fee RM, PageID.120.)  Since the Bankruptcy Court only allowed the fees – and did not direct Debtor to pay them – the Fee Objections are utterly without merit. Moreover, even

Produce Pay's objection to payment was settled when the Bankruptcy Court entered an order allowing Debtor's use of cash collateral.   (Cash Collateral Order, PageID.2110-2123.)[9]  The Bankruptcy Court correctly held that the cash collateral order is the law of the case; therefore, Debtor may use the cash collateral to pay professional fees and expenses.[10]   (Order Denying Fee RM, PageId.121) (citing *Lewis v. Casab (In re Casab),* 523 B.R. 543 (Bankr. E.D. Mich 2015)).

Finally, in the Fee Stipulation, Produce Pay agreed that its Fee Objections would be moot "if the Court determines that Produce Pay does not have a valid PACA claim."  (Fee Stipulation, PageID.2784-2789.)  The Fee Stipulation did not require it to be a final, non-appealable order.  As the Bankruptcy Court held, "[i]n the event that this court disallowed its PACA claim, Produce Pay agreed in a stipulation filed with this court that its objections to the fee applications would be rendered moot [Dkt. No. 517].  On October 18, 2018, the court disallowed Produce Pay's claim under PACA [Dkt. Nos. 537, 538].  Pursuant to Produce Pay's own stipulation, Produce Pay's objections to the fee applications of the Professionals are now moot."  (Order Denying Fee RM, PageId.121.)  Therefore, this Court should affirm the Bankruptcy Court's Fee Orders.

---

[9] Specifically, the cash collateral order overruled all objections to Debtor's motion to use cash collateral.  (PageID.2111.)

[10] The cash collateral order permitted Debtor to pay professional fees and expenses in accordance with Debtor's cash collateral budget. (See Cash Collateral Order, PageID.2112, ¶ 3 and budget at PageID.2116-2122.)

## CONCLUSION

Produce Pay never bought Produce from Debtor.  Produce Pay never sold Produce to Debtor.  Produce Pay never supplied Produce to Debtor or any end customer.  Produce Pay did not purchase Debtor's accounts receivable.  Produce Pay did not acquire Debtor's rights as a PACA beneficiary.  As the Bankruptcy Court held, "[n]o matter how creative the [Distribution] Agreement may be, it constitutes a financing arrangement. . . ."  (Opinion, PageID.3059.)  As a lender, Produce Pay is simply not protected by PACA.

Upon a review of the Bankruptcy Court's findings of facts, this Court will conclude that not only are the findings not clearly in error, but they are correct.  Similarly, upon reviewing the Bankruptcy Court's conclusions of law, this Court will conclude that the Bankruptcy Court's decisions properly reflect the law and came to the proper holding.  Appellees request that this Court affirm the Bankruptcy Court's decisions.

Respectfully submitted on March 15, 2019,

**RAYMAN & KNIGHT**

By:   /s/ Cody H. Knight
      Cody H. Knight (P64811)
BUSINESS ADDRESS:
      141 E. Michigan Ave.,  Ste. 301
      Kalamazoo, MI  49007
      Telephone: (269) 345-5156
*Attorneys for the Debtor*
18261416-6

**WARNER NORCROSS + JUDD LLP**

By:   /s/ Elisabeth M. Von Eitzen
      Elisabeth M. Von Eitzen (P70183)
BUSINESS ADDRESS:
      111 Lyon Street, NW, Suite 900
      Grand Rapids, MI 49503
      Telephone: (616) 752-2418
*Attorneys for the Official Committee of Unsecured Creditors*

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 5,090 words and does not exceed 30 pages.

2.     This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman Size 14 font.

**RAYMAN & KNIGHT**
Attorneys for the Debtor

Dated: March 15, 2019          By:     /s/ Cody H. Knight
                                       Cody H. Knight (P64811)

**WARNER NORCROSS + JUDD LLP**
Attorneys for the Official Committee of
Unsecured Creditors

Dated: March 15, 2019          By:     /s/ Elisabeth M. Von Eitzen
                                       Elisabeth M. Von Eitzen (P70183)

18261416-5

23

## CERTIFICATE OF SERVICE

This certifies that Appellees' Brief was served on March 15, 2019 using the ECF System, which sent notification to all persons registered to receive e-filings in this case.

**WARNER NORCROSS + JUDD LLP**

Dated: March 15, 2019     By:   /s/ Elisabeth M. Von Eitzen

                                      Elisabeth M. Von Eitzen (P70183)

BUSINESS ADDRESS:
111 Lyon Street, NW, Suite 900
Grand Rapids, MI 49503
Telephone: (616) 752-2418
18261416-5